EDMOND E. FOSTER & another *vs.* CONNECTICUT RIVER TRANSMISSION COMPANY.

Worcester. October 5, 1915. — April 11, 1916.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Deed,* Construction. *Contract,* Construction. *Easement,* Extent of. *Trespass.*

In an action of contract against a corporation to recover compensation for the damage done by extra poles erected by the defendant on the land of the plaintiff in the exercise of an easement, it appeared that the plaintiff by deed had granted to the defendant "the perpetual right and easement to erect, repair, maintain and patrol a single or double line of poles or towers and wires strung upon the same and from pole to pole and from tower to tower, for the transmission of high or low voltage electric current, with all necessary anchors, guys and braces, to properly support and protect the same, over and across" the land described, and that the deed also contained the following provision: "In further consideration, the second party has paid to the first party the sum of five dollars for each one hundred feet of land crossed by the above mentioned pole or tower line, for a single line of poles or towers; and the party of the second part hereby agrees to pay for any extra poles or towers set on the above described property five dollars

for each one hundred feet of land crossed by the wires strung upon the same." It further appeared that the defendant later erected a pole between each of the two existing towers and one pole beyond the outside tower at each end of the line, that these poles were connected only with telephone wires already existing, that they took the place of weights and bars that previously had supported these wires and that no new wires were strung on the new poles. *Held*, that under the easement and the contract contained in the deed the defendant had no right to erect the new line of poles merely to support existing wires, and therefore that the poles were unauthorized structures, whose erection was a trespass, and accordingly that the plaintiff could not recover compensation for "extra poles" in an action of contract, although he might be permitted to amend his action into an action of tort.

CARROLL, J. This is an action of contract to recover for "extra poles" placed on the plaintiffs' land, extending a distance of twenty-six hundred and seventy-eight feet. In 1908 the plaintiffs conveyed to the Connecticut River Power Company the perpetual right and easement to erect a line of poles over their land, the grantee agreeing to pay "five dollars for each one hundred feet of land crossed by the above mentioned pole line."

In January or February, 1909, seven steel towers, each about forty-five feet high, were erected on the plaintiffs' land. In March or April of the same year six "electric cables for high voltage" were strung from these towers. Above these cables, on the top of each tower, was a pole; along these poles was strung a single line of wire called the "lightning wire." Below the cables were two telephone wires, strung from tower to tower, and supported by weights and bars.

After this work was done, on September 3, 1909, the plaintiffs conveyed to the defendant the right previously conveyed to the power company, namely, "the perpetual right and easement to erect, repair, maintain and patrol a single or double line of poles or towers and wires strung upon the same and from pole to pole and from tower to tower, for the transmission of high or low voltage electric current, with all necessary anchors, guys and braces, to properly support and protect the same, over and across" the land described. The deed contained this stipulation: "In further consideration, the second party has paid to the first party the sum of five dollars for each one hundred feet of land crossed by the above mentioned pole or tower line, for a single line of poles or towers; and the party of the second part hereby agrees to pay for any extra poles or towers set on the above described property five

dollars for each one hundred feet of land crossed by the wires strung upon the same."

December 27, 1911, Edmond E. Foster, one of the plaintiffs, executed a release to the defendant in which he acknowledged the "receipt of twenty dollars ($20.00) in full . . . payment for all past and future cutting of wood . . . occasioned by keeping cleared without further payment therefor a strip of land substantially 50 feet in width on either side of the centre line of the transmission lines of the Connecticut River Transmission Company as now constructed . . . and for all damages . . . arising from the exercise of the rights to erect, maintain and operate said transmission lines as granted by deed dated Sept. 3, 1909." This release also stipulated: "I further acknowledge that the lines as now erected are satisfactorily located in accordance with said deed which I hereby ratify and confirm."

In October, 1914, the defendant placed one chestnut pole between each of the two existing towers, and one pole beyond "the outside tower at each end of the line on said land." These poles were twenty-three or twenty-four feet high, and connected only with the telephone wires at the place where the weights and bars had previously supported them.

The plaintiffs contended that these telephone poles were extra poles within the meaning of the deed, and that they are entitled to $5 for each one hundred feet of land covered by the wires strung upon the same. Edmond E. Foster was the only witness, and at the conclusion of his testimony the judge * directed a verdict for the defendant.

No additional wires, towers or poles have been placed on the land since September, 1909, with the exception of the so called extra poles, supporting the telephone wires. These telephone wires were in place when the deed of September, 1909, was delivered.

The deed does not designate what particular part of the land is to be crossed by either the "single or double line of poles or towers."

By the conveyance creating the easement over the plaintiffs' land the defendant was given the right to repair and maintain a single line of poles or towers and the wires strung upon the same, and also a double line of poles or towers and the wires strung upon the same, with the necessary anchors, guys and braces to

---

* *Hall,* J.

protect the same. These poles between towers, supporting the wires in place of the weights and bars, are not "anchors, guys," or "braces," as these words are used in the contract; and the construction of this additional pole line is not a repair or maintenance within the terms of the grant. If in order to support the existing wires it became necessary to erect an additional line of towers along the line already crossed by the wires, the erection of such towers could not be considered a repair within the language of the deed, even if the towers were intended to take the place of the weights and bars and were constructed where they formerly had been; nor could such a line of towers come under the designation "anchors, guys and braces." The same construction applies equally to a line of poles, such as the line in question, which the defendant has erected since the delivery of the deed in September, 1909. .

We assume in favor of the defendant, but do not decide, that the conveyance gave authority to the defendant to string the telephone wires from tower to tower, or that, if this right was not given thereby, the plaintiffs' acknowledgment in the release of December 27, 1911, "that the lines as now erected are satisfactorily located . . . which I hereby ratify and confirm," was equivalent to an authorization to continue these telephone wires as they were then existing. Notwithstanding this assumption, we think the line of poles erected was not within the intent and purpose of the contract. The contract did not give the defendant the right to construct a second line of towers or poles merely to carry and support the existing wires; it gave it the right to erect a second or double line of poles or towers for the purpose of carrying an additional line of wires strung upon the same, and from pole to pole and tower to tower. The defendant had the right to erect a second line of wires, and the towers and poles necessary to support and sustain it. The space crossed by the existing single line measured the compensation paid the plaintiffs, and for each one hundred feet of land crossed by the line the defendant paid $5 "for a single line of poles or towers." This language, we think, excludes an additional line or double line of poles to carry this same body of wires, and the second line of poles when constructed was to be paid for in the same way, that is to say, at the rate of $5 for each one hundred feet crossed by the wires strung upon the same.

The plaintiffs did not convey the title to the land crossed by the wires; they did not grant the defendant the privilege of placing an unlimited number of poles or towers within this area; the defendant was given merely an easement to cross the plaintiffs' land with a single line of poles or towers, not a single line of poles and towers, or more than one line of towers or poles to support these same wires. Foster, by his release of December, 1911, accepted by the defendant, shows that the line of wires with the single line of towers, as then located and before the poles in question were erected, was "satisfactorily located in accordance with said deed." The number of poles or towers was not stipulated in the deed. Assuming that the defendant was authorized therein to place as many towers or poles as were necessary to carry the wires in the original construction of the line, in our opinion it was not thereby authorized, after the structure was completed and the line in operation, to further occupy the plaintiffs' land with this line of "extra poles" within the space covered by the already existing wires and for the purpose of their support, these poles being neither a repair, nor "anchors, guys and braces," as stated in the contract.

We think the "extra poles" mentioned in the instrument of conveyance, for which the plaintiffs were to be paid according to the extent of the land crossed by the wires strung on them, were such poles as were to be used in constructing the additional or double line of wires; and these poles for which the plaintiffs now seek to recover in an action of contract cannot be considered a double line of poles within the meaning of the deed.

The defendant, therefore, had no right to erect the poles where it placed them and for the purpose for which it constructed them. In so doing it was not protected by the contract and was trespassing on the plaintiffs' rights. But it does not follow from this that the plaintiffs can recover in the present form of action. If before the entry of final judgment a motion should be filed by the plaintiffs to amend the action into an action of tort, its disposition would be within the discretion of the Superior Court. *Childs* v. *Boston & Maine Railroad*, 213 Mass. 91.

*Exceptions overruled.*

*H. W. Blake,* for the plaintiffs.

*R. Y. FitzGerald,* for the defendant.